IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHELLE MATHIS,<br><br>          Plaintiff,<br><br>vs.<br><br>CLAYTON P. PERRIRAZ,<br><br>          Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANT<br><br>Case No. 2:08-CV-507 DN<br><br>Magistrate Judge David Nuffer |

Defendant Clayton P. Perriraz's Motion for Partial Summary Judgment[1] on Plaintiff Michelle Mathis's claim for quiet title is before this Court. For the reasons set forth below, Defendant's motion is GRANTED.

This case is a dispute between two individuals formerly in a personal relationship, who now seek to have the court define the nature of their relationship in land. Mathis claims that Perriraz is a lienholder on the disputed property, in contradiction to the state of the property record showing that he is a co-owner. Perriraz moved for summary judgment against Mathis on her quiet title claim, in which Mathis seeks a declaration that Perriraz is in fact a mortgagee, not an owner.[2] This order grants summary judgment in Perriraz's favor and against Mathis on the quiet title claim. Mathis's second cause of action[3] seeking an injunction against Perriraz's "interference" with her "use and enjoyment" of the property is not adjudicated on this motion.

---

[1] Defendant's Motion for Partial Summary Judgment, docket no. 26, filed June 8, 2009.

[2] Complaint ¶¶ 9-14, docket no. 2, filed July 2, 2008.

[3] *Id.* ¶¶ 15-19.

# Contents

UNDISPUTED FACTS ................................................................................................ 3

DISPUTED FACTS .................................................................................................... 8

UNCLEAR FACTS .................................................................................................. 10
  Summary of Facts ................................................................................................ 10

DISCUSSION ......................................................................................................... 11
  I.  Summary Judgment ......................................................................................... 11
  II.  Issues Presented ............................................................................................ 13
  III.  The Law of Equitable Mortgages ................................................................. 14
    An Obligation .................................................................................................. 17
    Relative Value ................................................................................................. 19
    Contemporaneous and Subsequent Acts ......................................................... 20
    Parties' Statements .......................................................................................... 20
    Written Evidence ............................................................................................. 21
    Nature of the Testimony ................................................................................. 21
    Relationship .................................................................................................... 22
    Apparent Aims of the Transfer ....................................................................... 22
    Summary ......................................................................................................... 22

IV. Conclusion ....................................................................................................... 22

ORDER .................................................................................................................. 23

## UNDISPUTED FACTS

The court has carefully examined the facts asserted by the declaration of Plaintiff Mathis[4] and the affidavit of Clayton Perriraz[5] as well as his deposition,[6] and here summarizes the facts not in dispute; the facts in dispute; and some factual details which are unclear on the record presented.  As will be later discussed, the disputed and unclear facts are not material to the issues which determine this motion.

1.      Michelle Mathis first met Clayton Perriraz in December, 2005 and they developed a close personal relationship.[7]

2.      On September 15, 2006, M, Inc. was incorporated by Plaintiff Mathis and organized under the laws of the State of Wyoming.[8]

3.      M, Inc. currently operates two hotels in Moab, Utah and Montrose, Colorado. Until March 2008, M, Inc. operated a hotel in Buffalo, Wyoming.[9]

4.      Mathis is the President of M, Inc. and the sole officer, director, and shareholder of M, Inc.[10]  While Mathis and Perriraz signed a document in October 2007 as President and Vice

---

[4] Declaration of Michelle Mathis ("Mathis  Decl."), Exhibit 23 to Plaintiff's Memorandum in Opposition re Motion for Partial Summary Judgment (Opposition Memorandum), docket no. 29, filed July 13, 2009.  All references to Mathis exhibits are exhibits attached to this Opposition Memorandum.

[5] Affidavit of Clayton P. Perriraz in Support of Motion for Partial Summary Judgment ("Perriraz Aff."), docket no. 28, filed June 8, 2009.

[6] Deposition of Clayton Perriraz ("Perriraz Depo."), attached as Exhibit 6 to Opposition Memorandum.

[7] Mathis Decl. ¶ 8; Reply Memorandum in Support of Defendant's Motion for Partial Summary Judgment ("Perriraz Reply") ¶ 22 at 13, docket no. 34, filed August 4 2009; Deposition of Clayton Perriraz ("Perriraz Depo.") at 8-9, Mathis Ex. 6.

[8] Mathis Decl. ¶ 3; Certificate of Incorporation for M, Inc., Mathis Ex. 2.

[9] Mathis Decl. ¶ 4.

[10] Mathis. Decl. ¶ 2; Articles of Incorporation and Bylaws for M, Inc., Mathis Ex. 1; Perriraz Depo. at 151-52.

president, respectively,[11] Perriraz acknowledged as of September 2007 that he is not affiliated or associated with M, Inc. or M, Inc.'s operation of the hotel location on the Property.[12]

5.      In the fall of 2006, Mathis decided to purchase the Property located at 168 N. Main St., Moab, Utah 84532 (the "Property") for the purposes of operating a hotel on the Property.[13]

6.      Perriraz made several payments to or on behalf of Mathis and/or M., Inc., totaling $66,569.00, prior to and in connection with the purchase of the Property, as indicated in several checks and other documents.[14]  Perriraz also incurred credit card charges on a Citi card account in his name in the amount of $41,911.86, as indicated in credit card statements.[15]

7.      Perriraz's cash disbursements largely came from his Total Landscaping & Turf business account, which is a landscaping company that he owns in Texas.[16]

8.      On October 23, 2006, Mathis signed a check written on the account of Mtn. West Properties, Inc. for $5,000 as an earnest money deposit in connection with the purchase of the Property.[17]

9.      On or about November 20, 2006, Mathis and Perriraz signed a real estate purchase contract (the "REPC") to purchase the Property with Mark and Janie Williamson as Seller.[18]  The document is signed by them individually, without any representation of corporate

---

[11] Mathis Ex. 10.

[12] Mathis. Decl. ¶ 13, Clayton Perriraz Statement, Mathis Ex. 4; Perriraz Depo. at 104-105, 114-115, 138, 142-44, 146-47,153-54, 158, 166-69, 179, 207-208, 212-16.

[13] Mathis. Decl. ¶ 5-6; Perriraz Reply ¶ 20.

[14] Mathis Decl. ¶ 14; Perriraz Reply ¶ 28.

[15] Mathis. Decl. ¶ 15, Credit Card Statements, Mathis Ex. 7; Perriraz Reply ¶ 29.

[16] Mathis. Decl. ¶ 14; Perriraz Reply ¶ 29; Perriraz Depo. at 35, 75.

[17] Mathis. Decl. ¶ 21; Earnest Money Deposit Check, Mathis Ex. 11.

[18] Mathis Decl. ¶ 20; REPC, Mathis Ex. 10; Perriraz Aff.  ¶ 4; REPC, Exhibit 1 to Perriraz Aff. All further references to Perriraz exhibits are exhibits attached to Perriraz Aff.

capacity, but the preamble of the document indicates they signed as President and Vice-President of M, Inc.

10.     Perriraz and Mathis jointly executed four addenda to the REPC, including one providing that the Williamsons would seller finance some of the purchase price, with a balloon payment due in two years.[19]   In each of these documents, signatures are solely in personal capacities.

11.     On or about March 28, 2007, Perriraz and Mathis became jointly indebted on a promissory note in favor of the Williamsons in the principal amount of $170,000 (the "Williamson Note").[20]   Their signatures are solely in personal capacities.   In addition, they signed a personal guarantee addendum to the Note.

12.     On or about April 25, 2007, Mathis and Perriraz closed on the purchase of the Property, and the Williamsons delivered a Warranty Deed conveying the Property to "Michelle Mathis and Clayton Perriraz, as joint tenants, Grantees" dated March 30, 2007.[21]

13.     On April 25, 2007, in connection with their purchase of the Property, Mathis and Perriraz became individually and jointly indebted on a promissory note in favor of Temecula Valley Bank ("Temecula Note I") in the principal amount of $809,375.[22]

14.     On April 25, 2007 in connection with their purchase of the Property, Mathis and Perriraz became individually and jointly indebted on an additional promissory note in favor of Temecula Valley Bank ("Temecula Note II") in the principal amount of $1,156,250.[23]

---

[19] Mathis Decl. ¶ 22, REPC Addendums, Mathis Ex. 12; Perriraz Aff. ¶ 5-7, 9, Addendums, Perriraz Ex. 2-4, 6.

[20] Mathis Decl. ¶ 23; Williamson Note, Mathis Ex. 13; Perriraz Aff. ¶ 8; Williamson Note, Perriraz Ex. 5.

[21] Mathis Decl. ¶ 25; Warranty Deed, Mathis Ex. 15; Perriraz Aff. ¶ 10; Warranty Deed, Perriraz Ex. 7.

[22] Mathis Decl. ¶ 26; Temecula Note I, Mathis Ex. 16; Perriraz Aff. ¶ 11; Temecula Note I, Perriraz Ex. 8.

[23] Mathis Decl. ¶ 27; Temecula Note II, Mathis Ex. 17; Perriraz Aff. ¶ 12; Temecula Note II, Perriraz Ex. 9.

15.      On April 26, 2007, in connection with the Temecula Notes I and II (hereinafter collectively referred to as the "Temecula Notes") "Michelle Mathis and Clayton Perriraz, as joint tenants" executed Deeds of Trust securing payment of the Temecula Notes. [24]  Mathis understood that "Temecula Valley Bank and the SBA required that Perriraz be indebted on the Temecula Notes and the SBA Note because Perriraz was named on the deed as a joint owner of the Property."[25]

16.      On or about July 20, 2007, "Clayton P. Perriraz and Michelle L. Mathis, as joint tenants" entered into a lease agreement as lessors for the Property with M, Inc. as lessee (the "M, Inc., Lease").[26]  The M, Inc., Lease assigned all rights as security for a Small Business Administration Loan ("SBA Loan").

17.      Under the terms of the M, Inc. Lease and a Real Estate Lease Subordination Agreement, executed on July 20, 2007, all lease payments made by M, Inc. were required to service the debt on the SBA Loan, and subsequently, the Temecula Notes.[27]

18.      On or about July 30, 2007, "Clayton P. Perriraz and Michelle L. Mathis, as joint tenants" executed a third Deed of Trust securing an $836,000 promissory note executed in favor of the SBA.[28]

19.      On or about August 23, 2007, Michelle Mathis and Clayton Perriraz, as grantors, executed a Special Warranty Deed conveying the Property to "Clayton P. Perriraz and Michelle

---

[24] Mathis Decl. ¶ 28; Temecula Deeds of Trust, Mathis Ex. 18; Perriraz Aff. ¶ 13; Deed of Trust, Perriraz Ex. 10.

[25] Mathis Decl. ¶ 30; Perriraz Reply ¶ 44.

[26] Mathis Decl. ¶ 34; M, Inc. Lease, Mathis Ex. 20; Perriraz Aff. ¶14; Lease, Perriraz Ex. 12; Perriraz Depo. at 161.

[27] Mathis. Decl. ¶ 35; M, Inc. Lease, Mathis Ex. 20; Subordination Agreement, Mathis Ex. 21; Perriraz Reply ¶ 49; Lease, Perriraz Ex. 12.

[28] Mathis Decl. ¶ 29; SBA Deed of Trust, Mathis Ex. 19; Perriraz Aff. ¶ 15; Deed of Trust, Perriraz Ex. 13.

L. Mathis" as joint tenants.[29]  This Special Warranty Deed is the only document attached to Mathis's complaint and the only document as to which she sought declaratory judgment and quiet title.

20.    According to an M, Inc. Vendor Quick Report the entire Williamson Note (see Paragraph 11) was paid in eight installments, including an initial payment of $85,000 in August 2007 and a final payment of $79,605.05 in August 2008.[30]

21.    Perriraz did not pay any amounts owed on the Williamson Note.[31]

22.    On October 4, 2007 Perriraz provided a summary of amounts totaling $66,569 he disbursed related to the Property.[32]  It is titled "Clayton's Investment in Landmark in Moab."

23.    According to an M, Inc. Vendor Quick Report, on October 6, 2007 a payment was made to Perriraz in the amount of $2,000.[33]  Mathis does not assert any other payments were made to Perriraz toward what she alleges is a $66,569 debt to Perriraz.

25.    Mathis or M., Inc. has made all of the outstanding payments on the Temecula Notes and the SBA Note.[34]  Perriraz has never made any payments relating to any outstanding indebtedness on the Property to Temecula Valley Bank or the SBA Loan.[35]

26.    Mathis or M, Inc. has made all of the outstanding payments relating to taxes, insurance, utilities, and repairs for the Property.[36]

---

[29] Mathis Decl. ¶ 9; Mathis Opp. ¶ 13; Special Warranty Deed, Mathis Ex. 3; Perriraz Aff. ¶ 16, Special Warranty Deed, Perriraz Ex. 14.

[30] Mathis Decl. ¶ 24; M, Inc. Vendor Quick Report, Mathis Ex. 14; Perriraz Depo. at 79-80.

[31] Mathis Decl. ¶ 24; Perriraz Depo. at 79-80.

[32] Mathis Decl. ¶ 16; October 4, 2007 Statement, Mathis Ex. 8; Perriraz Reply ¶ 28.

[33] Mathis Decl. ¶17; M, Inc. Vendor Quick Report , Mathis Ex. 9; Perriraz Reply ¶ 31; Perriraz Depo. at 45:24 to 46:3.

[34] Mathis Decl. ¶ 31; Perriraz Reply ¶ 45.

[35] Mathis Decl. ¶ 31; Perriraz Depo. at 129–132, 212–216.

[36] Mathis Decl. ¶ 32; Perriraz Reply ¶ 46; Perriraz Depo. at 207–08, 211.

27.     Mathis or M, Inc., made all of the monthly payments owed on Perriraz's credit card from May 2007 until June 2008.[37]

28.     After the Property was purchased in April 2007, Mathis received a line of credit from Wells Fargo in the amount of $100,000 to help pay for expenses related to the Property. Perriraz never made any payments on the Wells Fargo line of credit.[38]  Mathis's papers claim the payments on this loan were made by M, Inc.[39]

29.     In June 2008, after this dispute arose regarding the Property, Mathis or M, Inc. stopped making the monthly payments on Perriraz's Citi card.[40]

30.     On or about February 23, 2009, Mathis executed a Quitclaim Deed, in which Mathis conveyed her interest in the Property to herself as a tenant in common.[41]

31.     On July 2, 2008Mathis filed the Complaint against Perriraz seeking a judgment from this Court quieting title in the Property and an injunction against his interference with her use of the Property.[42]

## DISPUTED FACTS

To avoid Summary Judgment, Mathis makes several factual assertions supporting her claim that Perriraz is not an owner but a mortgagee.

1.      "In order to obtain initial funds required to prepare for and ultimately purchase the Property, M, Inc. needed to sell its hotel in Buffalo, Wyoming, or alternatively, I needed to

---

[37] Mathis Decl. ¶ 18; Perriraz Depo. at 93, 95-96; Perriraz Reply ¶ 32.

[38] Mathis Decl. ¶ 33; Perriraz Reply ¶ 47; Perriraz Depo. at 207-08, 211.

[39] Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment Against Defendant's Second, Third, and Fourth Causes of Action ¶ 12 at 4, docket no. 31, filed July 22, 2009.

[40] Mathis. Decl. ¶ 37; Perriraz Reply ¶ 51.

[41] Mathis Decl. ¶ 36; Quitclaim Deed, Mathis Ex. 22; Perriraz Aff. ¶ 17; Quitclaim Deed, Perriraz Ex. 15.  (The deed was presumably intended to sever the joint tenancy.)

[42] Complaint, docket no. 2, filed July 2, 2008.

obtain a small loan from another source."[43]

2.    "Given our personal relationship, Perriraz and I agreed that Perriraz would loan me money to help with the purchase of the Property."[44]  "To secure repayment of the loan, Perriraz and I recorded a deed naming us both as grantees and joint tenants.  The deed was executed and given to Perriraz solely to secure repayment of the loan."[45]

3.    "Perriraz and I never intended or agreed that Perriraz would be an owner of the Property, as he was not involved in any official capacity with M, Inc.'s operation of the hotel business located on the Property."[46]

4.    "Perriraz and I agreed to remove Perriraz's name from the title to the Property once Perriraz received full payment."[47]

5.    "Perriraz expected to be paid in full for all such amounts owed on the Loan."[48]

6.    "The deed recorded in Perriraz's name was a security interest solely to secure the repayment of the loan.  The principal amount of the agreed upon loan was $108,480.86, to be paid in full at an agreed upon interest rate."[49]

7.    Mathis claims the "Loan" from Perriraz consisted of two parts, the direct payments by Perriraz and the credit card charges, and that Perriraz made several payments "to or on behalf of me and/or M, Inc."[50]

---

[43] Mathis Decl. ¶ 7; Perriraz Reply ¶ 21.

[44] Mathis Decl. ¶ 9; Perriraz Reply ¶ 23.

[45] Mathis Decl. ¶ 9; Special Warranty Deed, Mathis Ex. 3;  Perriraz Reply ¶ 23.

[46] Mathis Decl. ¶ 12; Perriraz Reply ¶ 26.

[47] Mathis Decl. ¶10; Perriraz Reply ¶ 24.

[48] Mathis Decl. ¶ 16; October 4, 2007 Statement, Mathis Ex. 8; Perriraz Reply ¶ 30.

[49] Mathis Decl. ¶ 11; Perriraz Reply ¶ 25.

[50] Mathis Decl. ¶ 14; Perriraz Reply ¶ 28.

8.      Mathis claims the payments to the Williamsons, to other lenders, on the credit card and to Perriraz (in alleged payment of this loan) were made by her rather than M, Inc.[51]

10.      Perriraz accepted a $2,000 payment on the loan and did not repudiate the payments made by M, Inc., on the credit card. [52]

12.      "Perriraz was never intended to be an owner of the Property but rather a lender with a security interest in the Property. As described above, and since the purchase of the Property in 2007, Perriraz's actions are entirely inconsistent with an ownership interest in the Property."[53]

## UNCLEAR FACTS

There are many facts that are not clear on the record before the court:

1.      The dates of payments and amounts paid on Perriraz's Citi credit card are not provided.

2.      The origin and purpose of the charges on the credit card in the amount of $41,911.86 are unclear.

3.      The balance remaining on the $66,569 advance made by Perriraz is not disclosed by either party.

4.      The terms of repayment of Mathis's alleged obligation to Perriraz, including the interest rate, term, and periods of payment are not described.

### Summary of Facts

In summary, Mathis and Perriraz had a close relationship.  In numerous documents, many executed with third-parties, they jointly evidenced their relationship in the Property as co-

---

[51] Mathis Decl. ¶¶ 17, 18, 21, 24; Perriraz Reply ¶¶ 31, 32, 35, 38.

[52] Mathis Decl. ¶ 19; Perriraz Reply ¶ 33.

[53] Mathis Decl. ¶ 38; Perriraz Depo. at 212; Perriraz Aff. ¶ 18;  Perriraz Reply ¶ 52.

owners, co-debtors, co-mortgagees, and co-lessors.  There is no document indicating Perriraz is a lender or evidencing the fact or terms of Mathis's alleged obligation to repay the nearly $109,000 Perriraz advanced toward the Property.  Further, Mathis does not allege there was a verbal agreement as to the fact or terms of any obligation of repayment, such as the interest rate, term, payment schedule, etc.  The record shows Mathis has personally paid nothing toward the sums Perriraz advanced, but that M, Inc., has paid sums to Perriraz totaling less than half the sums he expended.  Perriraz has paid nothing toward the loan obligations in favor of third parties, but neither has Mathis – such payments were made by M, Inc., the lessee of the Property, which is obligated to pay all such amounts under the lease.

## DISCUSSION

## I.  Summary Judgment

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[54]  Upon proper motion, summary judgment will be granted unless the non-moving party, by affidavits or otherwise, "set[s] out specific facts showing a genuine issue for trial."[55]

Summary judgment proceedings focus on evidence, not allegations.[56]  "Unsupported conclusory allegations . . . do not create an issue of fact."[57]  Because conclusory allegations not

---

[54] *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)).

[55] Fed. R. Civ. P. 56(e)(2).

[56] *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

[57] *Id.* (citing *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir.2005)).

supported by evidence are insufficient to resist summary judgment, some of the disputed facts asserted by Mathis are not sufficient to raise issues of fact.

For example, her unsupported statements of *Perriraz's intent*, without any statement of evidence to support her knowledge of that intent, must be disregarded.

Perriraz *expected* to be paid in full for all such amounts owed on the Loan.[58]

Perriraz prepared [the October 4, 2007 statement] to *identify* all Loan disbursements.[59]

Similarly, Mathis's statement of *her personal intent* (without any statement that this intent was communicated to Perriraz, understood by him, or agreed) is insufficient.

In order to obtain initial funds required to prepare for and ultimately purchase the Property, M, Inc. needed to sell its hotel in Buffalo, Wyoming, or alternatively, *I needed to obtain a small loan* from another source.[60]

She also makes a statement of unattributed intent, which is not helpful.

Perriraz was never *intended* to be an owner of the Property but rather a lender with a security interest in the Property.[61]

Also, *Mathis's legal conclusions* without any supporting facts cannot raise a genuine issue. For example. Mathis often asserts "agreements" without any foundation, context, or terms. These statements leave us without any evidence of the making of an agreement – only Mathis's contention that there is one.

Given our personal relationship, Perriraz and I *agreed* that Perriraz would loan me money to help with the purchase of the Property.[62]

Perriraz and I never *intended or agreed* that Perriraz would be an owner of the Property . . . .[63]

---

[58] Mathis Decl. ¶ 16 (emphasis added).

[59] *Id.*

[60] Mathis Decl. ¶ 7 (emphasis added).

[61] Mathis Decl. ¶ 38; Perriraz Depo. at 212; Perriraz Aff. ¶ 18.

[62] Mathis Decl. ¶ 9 (emphasis added).

[63] Mathis Decl. ¶ 12 (emphasis added).

Perriraz and I *agreed* to remove Perriraz's name from the title to the Property once Perriraz received full payment.[64]

These slim conclusory statements are at the core of Mathis's case.  However, they must all be disregarded as they are not supported by any evidence.  They are her opinion and conclusion, but are not evidence.  This is particularly important in this case, where the law requires that Mathis be capable of producing clear and convincing evidence to sustain a claim which would contradict the many documents which the parties executed among themselves and with third parties.

## II.  Issues Presented

Perriraz's opening memorandum argued that Mathis's claims were defeated by long-respected doctrines of real estate law.  Perriraz marshaled the concepts of the statute of frauds,[65] the parol evidence rule[66] and the merger doctrine[67] against Mathis's claim that the documents were not as they appeared – that Perriraz was a mere lender rather than co-owner, co-obligor, co-guarantor, and co-mortgagee.  The statute of frauds, the parol evidence rule and the merger doctrine all support the reliability of documentation regarding real estate, invalidating or limiting claims of interests in real estate not supported by written evidence.  But they are not the law governing this case.

Mathis's opposition memorandum raised the legal doctrine which actually governs her claim – "Utah case law regarding equitable mortgages—i.e., deeds intended as security

---

[64] Mathis Decl. ¶ 10 (emphasis added).

[65] Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment (Supporting Memorandum) at 5, docket no. 27, filed June 8, 2009.

[66] *Id.* at 6.

[67] *Id.* at 7.

instruments."[68]—This doctrine is consistent with the doctrines argued in Perriraz's opening memorandum but more aptly embodies the law concerning Mathis's claim that the truth is contrary to the documents.  The law of equitable mortgages expresses the fundamental importance of real estate; the need to rely on documentation to support claims to real estate; and the need for cautious consideration of any claim contrary to documentation.

Mathis's claim depends on her ability to show that the multiple agreements, deeds, notes, and trust deeds, as well as the lease agreement are all *not what they appear*.  Though all these papers evidence his ownership, Mathis claims otherwise.


## III.  The Law of Equitable Mortgages

In Utah, "[a] fee simple is presumed to be intended to pass by a conveyance of real estate, unless it appears from the conveyance that a lesser estate was intended."[69]  Under certain conditions, "[a] deed, absolute in form, may be construed as an equitable mortgage if it was intended as security under a parol agreement rather than as an outright conveyance."[70]  However, if the deed is absolute in its face—as is the case here—the party claiming that the deed is not a conveyance bears the burden of proof "to show by clear and convincing evidence that the conveyance was intended as a mortgage."[71]  "In the absence of such clear and convincing evidence, the presumption is that the instrument of conveyance is what it purports to be."[72]

This high standard of proof must be considered on a motion for summary judgment.  If a "'clear and convincing' evidence requirement applies, the trial judge's summary judgment

---

[68] Opposition Memorandum at 2.

[69] Utah Code Ann. § 57-1-3; *accord Baker v. Taggart,* 628 P.2d 1283,1284 (Utah 1981).

[70] *Bown v. Loveland,* 678 P.2d 292, 297 (Utah 1984).

[71] *Id.* at 297.

[72] *Baker,* 628 P.2d at 1284 (quoting *Hansen v. Kohler,* 550 P.2d 186, 188-189 (Utah 1976), *Corey v. Roberts,* 82 Utah 445, 25 P.2d 940 (1933)); *see* Osborne, Nelson & Whitman, *Real Estate Finance Law* § 3.67 (1979).

inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for [the claimant]."[73]   Accordingly, Perriraz is entitled to summary judgment against Mathis on her claim of an equitable mortgage if she cannot present material disputed facts which could support a jury's finding by clear and convincing evidence.  She does not have to present that quantum of evidence; but must present a disputed fact which if found in her favor could support a verdict.  Again, this standard requires disregard of her conclusory statements of Perriraz's intent; her personal intent; or "agreements" without any evidence of their formation or terms.

Utah case law on equitable mortgages is abundant and clear.   The Utah cases on equitable mortgages provide some helpful context.  Often the cases involve a debtor under duress to another creditor/mortgagee and the new "grantee" comes in to rescue the debtor, but takes a deed to obtain what is perceived as a stronger security.[74]   The pending foreclosure and relief by a stranger with only a financial interest tends to indicate the conveyance is really a mortgage.

The parties' intentions are very important.  In one case, both parties admitted that "there was a continuing obligation on the part of the [debtor-grantor] to pay [the creditor-grantee] double his investment . . . and both parties understood that in the event of sale, the alleged creditor could only recover the amount of the debt."[75]   In another case, "[n]either plaintiff nor defendant insist[ed] that the instrument was intended as an absolute deed, without condition or purpose . . . ."[76]

---

[73] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); accord, e.g., *Applied Genetics, Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1243 (10th Cir. 1990).

[74] *Bown,* 678 P.2d at 298; *Bybee v. Stuart,* 189 P.2d 118 (Utah 1948); *Corey,* 25 P.2d at 947.

[75] *Bown,* 678 P.2d at 298.

[76] *Corey,* 25 P.2d at 947.

Intentions are best proven by admissions of the grantee (who is alleged to be a mortgagee). One case was made easier because the grantee's "deposition contains testimony that both parties considered the property in question to be pledged as collateral for the loan."[77] Thus there was an admission of a debtor-creditor relationship.

Contemporaneous documentation is most significant. In the usual case where documents are considered, contemporaneous writings indicate a debt. "[W]here there is a written agreement between the parties, contemporaneous with the deed, which indicates that the deed has been given for security purposes, the court will look to the real transaction and treat it as a mortgage."[78] The terms essential to formation of a debt obligation are required. "The deed and contract here show all the requisites of a formal mortgage-a conveyance of particular land as security for a debt with the necessary defeasance clause."[79]

On the other hand, other documents may indicate an absolute conveyance. While "most cases alleging an equitable mortgage involve "merely an oral understanding that the creditor will hold the deed only as security,"[80]

> [t]he situation is much different, however, when the transaction features not only a deed but also a contemporaneous written agreement stating the terms of the transaction. In that event, the deed will be read in light of the written agreement and will be subject to the established rules of construction concerning such agreements. In essence, the rule permitting a party to show that a deed was intended only as security must co-exist with other important rules of construction. Chief among these is the pronounced preference for gleaning the parties' intent, whenever possible, from written agreements rather than from self-serving testimony. Thus, if a party claims a deed was intended as a mortgage, and no written agreement regarding the transaction exists, courts have no choice but to consider parol evidence to determine the parties' intent. On the other hand, if the parties entered into a written agreement at about the same time the deed was

---

[77] *W.M. Barnes Co. v. Sohio,* 627 P.2d 56, 60 (Utah 1981).

[78] *Kjar v. Brimley,* 97 P.2d 23, 25 (Utah 1972) (citing *Bybee,* 189 P.2d 118.

[79] *Bybee,* 189 P.2d at 122.

[80] *Glauser Storage, L.L.C. v. Smedley,* 27 P.3d 565, 570 (Utah Ct. App. 2001) (citing *Winegar v. Froerer Corp.,* 813 P.2d 104, 110 (Utah 1991).

given, the court will look first to that agreement in its effort to decide what the parties intended.[81]

Finally, Mathis has not cited and the magistrate judge has been unable to find a case in which a conveyance to two persons has been claimed to be a mortgage in favor of one of them, evidencing a debt to the co- grantee.  And thus, no case has been cited in which a tenancy in common or joint tenancy was held to be a debtor-creditor, mortgagor-mortgagee relationship.  In fact, a joint tenancy with rights of survivorship would seem to be at complete odds with existence of a debt obligation.

The elements Utah courts consider when determining whether an absolute deed was intended as an equitable mortgage include: (1) whether there was a continuing obligation on the part of the grantor to pay a debt or meet an obligation the deed allegedly was made to secure; (2) the question of relative values; (3) contemporaneous and subsequent acts of the parties; (4) the parties' statements; (5) the form of the written evidence of the transactions; (6) the nature of the testimony on which the parties rely, (7) the relationship between the parties; and (8) the apparent aims and purposes of the transfer.[82]

Every one of these factors weighs against the finding of an equitable mortgage, and no reasonable juror could conclude *on Mathis's alleged facts* that the existence of an equitable mortgage is supported by clear and convincing evidence.

**An Obligation**

First, Mathis cannot show a continuing obligation to pay a debt which the Property allegedly secured.  It is undisputed that there is no promissory note, loan agreement, or other written document requiring Mathis to make payments.  Nor does Mathis allege facts which

---

[81] *Glauser Storage*, 27 P.3d at 570 (citations omitted).

[82] *Bown*, 678 P.2d at 297 (citing *Hansen v. Kohler*, 550 P.2d 186, 188-89 (Utah 1976)).

would prove the making of an agreement.  The best Mathis does in alleging agreements is to

assert *conclusions*, but she does not allege facts which would show formation or terms:

> Given our personal relationship, Perriraz and I agreed that Perriraz would loan me
> money to help with the purchase of the Property.[83]
>
> To secure repayment of the loan, Perriraz and I recorded a deed naming us both as
> grantees and joint tenants. The deed was executed and given to Perriraz solely to
> secure repayment of the loan.[84]
>
> Perriraz and I never intended or agreed that Perriraz would be an owner of the
> Property.[85]
>
> Perriraz and I agreed to remove Perriraz's name from the title to the Property once
> Perriraz received full payment.[86]

While Mathis conclusorily states there were agreements, she does not identify the time

and place of making such agreements; the oral statements which evidence such agreements; any

documentation of such agreements; or the expected terms of such agreements such as term,

periodic payments, or interest rate.

The sole document on which Mathis relies does not support her claim but is entirely

consistent with the many documents of record plainly showing Perriraz as a co-owner.  The

document Mathis refers to as a "statement that Perriraz prepared to identify all Loan

disbursements (excluding credit card charges)"[87] is actually titled "Clayton's Investment in

Landmark in Moab." [88]  An "investment" is "[a]n expenditure to acquire property or assets to

produce revenue; a capital outlay."[89]  An investment is an equity interest; not a loan.  The

---

[83] Perriraz Reply, ¶ 23; Mathis Decl. ¶ 9.

[84] Mathis Decl. ¶ 9; Special Warranty Deed, Mathis Ex. 3.

[85] Mathis Decl. ¶ 12.

[86] Mathis Decl. ¶ 10.

[87] Mathis Decl. ¶ 16.

[88] October 4, 2007 Statement, Mathis Ex. 8.

[89] *Black's Law Dictionary*, "Investment," (4th ed. 2004).

document says nothing about debt or repayment.  Mathis does not allege any statement by Perriraz contemporaneous to delivery of the document.

Further, the acts Mathis alleges to be *evidence of a debt* are actually consistent with *Perriraz's ownership.*  Perriraz did not pay of any debts to third parties or Property operating costs but neither did Mathis– because all the evidence of such payments shows they were not made by her, but were made by M, Inc., the lessee which is obligated to make them.  M., Inc.'s single payment of $2,000.00 to Perriraz and payment of sums incurred on Perriraz's credit card for the benefit of the Property can be related to repayment of an equity interest or accommodating an owner and are not necessarily evidence of a debt.  And a payment from M, Inc. does not evidence Mathis's obligation.

If there was an agreement for a debt, there would have to be terms – such as a repayment schedule and interest rate.   Mathis makes no such allegations.

**Relative Value**

Second, the relative value given by Perriraz supports an outright conveyance, and not merely a mortgage. Mathis attempts to paint the picture that Perriraz provided only a small investment in the Property, and says he has provided little or nothing else as consideration for his interest in the Property.  However, it is undisputed that Mathis could not have acquired the Property without Perriraz's funds.  "In order to obtain initial funds required to prepare for and ultimately purchase the Property. . .  I needed to obtain a small loan . . . ."[90]  Perriraz's funds made the deal possible.

And Perriraz is jointly and severally liable – dollar for dollar with Mathis -- on approximately two million dollars in loan obligations that were incurred to purchase Property.

---

[90] Mathis Decl. ¶ 7.

Thus, regardless the amount of cash investment, both Mathis and Perriraz are equally liable on the loan obligations secured by the Property, which is consistent with the parties' joint and equal fee interest in the Property. Mathis does not advance any argument or explanation why Perriraz would assume significant personal debt obligations if he were only a small lender.

**Contemporaneous and Subsequent Acts**

Third, the contemporaneous and subsequent acts of the parties demonstrate that Perriraz was a fee owner of the Property, and not a mortgagee. Mathis represented to the sellers of the Property, and to the financing institutions, that Perriraz was a co-owning joint tenant; Mathis herself conveyed the property a second time by special warranty deed to herself and Perriraz as joint tenants with rights of survivorship; Mathis herself has made no payments to or for the benefit of Perriraz; Mathis permitted Perriraz to represent himself to third parties as a co-purchaser, co-owner, co-obligor and co-mortgagor, and as a lessor on the lease to Mathis's closely held corporation, M, Inc.; and Mathis never required Perriraz to execute any written document evidencing the alleged mortgage agreement. For his part, Perriraz has obligated himself in notes and trust deeds for sums of money far greater than the supposed loan and he joined in lien instruments to third parties which would effectively nullify his security by subordination, if he were really a lender. The contemporaneous and subsequent acts of the parties are inconsistent with a Perriraz's position as a lienholder.

**Parties' Statements**

Fourth, the parties' repeated statements evidence outright conveyance and co-ownership. Mathis executed a purchase contract and four addenda representing to the seller that Perriraz was a joint buyer; Mathis represented in a warranty deed and subsequent quitclaim deed that Perriraz was a joint tenant; and Mathis represented to Temecula Valley Bank and the Small Business

Administration—in order to induce that institution to provide financing—that she and Perriraz were joint tenants.  The only statements made by Mathis to the contrary appear in the context of this litigation.  "[W]hen it suited [Mathis's] purpose, [she was] asserting that the property had been conveyed to and belonged to [Perriraz]; but when it was to [her] advantage to do so, [she] claimed it for [herself]."[91]

**Written Evidence**

Fifth, the form of written evidence of the transactions weighs heavily against Mathis.  All of the written evidence demonstrates that Perriraz is a joint owner.  Three different deeds—two of which were executed by Mathis and the third which she accepted—unambiguously show Perriraz's fee interest; all of the loan documents reflect Perriraz's fee interest; and the lease to Mathis's close corporation, M, Inc., includes Perriraz as an owner and lessor.  Even the statement which Mathis claims summarizes the sums Perriraz loaned is titled "Clayton's Investment."  Mathis does not point to a single document or a single statement from Perriraz that would tend to prove his role as a lender or identifies the Property as security for the alleged loan.  And this is not a case involving a single deed.  Mathis seeks to impeach many documents of record which she signed, and upon which third-party lenders have relied.

**Nature of the Testimony**

Sixth, the nature of the testimony on which the parties rely weighs heavily against Mathis.  Mathis relies almost exclusively upon her own self-serving conclusory statements, none of which were made before the commencement of this litigation. She does not allege a single statement from Perriraz that would support her position.  Perriraz's testimony that he is not an owner, officer, or director of M, Inc. has nothing to do with land ownership of the Property.

---

[91] *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976) (affirming trial court's finding that no equitable mortgage existed).

**Relationship**

Seventh, it is undisputed that the parties had a "close personal relationship."[92]  They had no prior relationship as lender-borrower.  A close personal relationship is consistent with a joint tenancy since there is no history of a commercial relationship.

**Apparent Aims of the Transfer**

Finally, the apparent aims and purposes of the transfer are evidenced on the one hand by numerous documents and in dispute only by virtue of Mathis's uncorroborated statements.  The accumulation of legal documents show apparent aims of acquisition of the Property incurring substantial debt and undertaking substantial risk.  The complexity of the transaction and the intervening interests of third party lenders are inconsistent with a loan to Mathis.  The documents show a high level of long term commitment for Perriraz, equivalent to that of Mathis.

**Summary**

On the evidence not in dispute, the factors relied on in Utah case law weigh against the existence of an equitable mortgage.  Mathis has not alleged facts that make a prima facie case that an equitable mortgage exists.  Certainly her allegations could not, if taken as true, support finding an equitable mortgage by clear and convincing evidence.

## IV. Conclusion

There are no genuine issues of material fact, and Perriraz is entitled to judgment as a matter of law against Mathis's claim to quiet fee title in herself.  She has not shown that she could, if genuinely disputed material facts were found in her favor, have Perriraz's interest deemed an equitable mortgage.

---

[92] Mathis Decl. ¶ 8.

## ORDER

IT IS HEREBY ORDERED that Perriraz's motion for summary judgment against Mathis's claim to quiet title[93] is GRANTED.

Dated this 6th day of January 2010.

BY THE COURT:

David Nuffer
United States Magistrate Judge

---

[93] Defendant's Motion for Partial Summary Judgment, docket no. 26, filed June 8, 2009.